# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:10-cr-39 |
| - vs - | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael R. Merz |
| CHUKWUEMEKA O. EZIOLISA, | : | |
| Defendant. | : | |

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON DEFENDANT'S RULE 60(b)(1) MOTION

This case is before the Court on Defendant's Objections (Doc. No. 63) to the Magistrate Judge's Report and Recommendations (Doc. No. 60), recommending that Defendant's Motion to Grant Rule 60(b)(1) Petition (Doc. No. 59) be denied.  Judge Rose has recommitted the matter to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 64).

**Procedural History**

Eziolisa was arrested December 30, 2009, on a Complaint charging him with armed robbery of Abbey Credit Union and a Check into Cash store in separate incidents earlier that month (Doc. No. 1).  On March 25, 2010, he waived indictment and pled guilty pursuant to a Plea Agreement  (Doc. No. 24). Judgment of conviction was entered on June 22, 2010 (Doc. No.

1

32). Eziolisa appealed to the Sixth Circuit (Notice of Appeal, Doc. No. 35), but the appeal was voluntarily dismissed (6th Cir. Case No. 10-3932, entries for 11/15/2010 and 11/17/2010).

Eziolisa filed his first § 2255 Motion July 8, 2011 (Doc. No. 42). Judge Rose dismissed that Motion with prejudice on September 19, 2011 (Doc. Nos. 48, 49). Although Eziolisa sought to appeal, the Sixth Circuit denied a certificate of appealability (6th Cir. Case No. 11-4364, copy docketed at Doc. No. 56).

Eziolisa filed a second § 2255 Motion to Vacate on July 19, 2013 (Doc. No. 57). On July 22, 2013, the Magistrate Judge recommended that this Motion be denied with prejudice (Doc. No. 60). Eziolisa filed no objections and Judge Rose adopted the Report and dismissed the second § 2255 Motion on August 20, 2013 (Doc. No. 62).

While the second § 2255 Motion was pending, Eziolisa filed the instant Rule 60(b)(1) Motion (Doc. No. 59). The Magistrate Judge recommended the 60(B) Motion be denied (Doc. No. 60). Eziolisa's timely[1] objections followed.

## Analysis

**The Motion is Untimely**

The 60(b)(1) Motion seeks relief from the Court's judgment on Eziolisa's first § 2255 Motion, not the second one. The judgment in question was final on December 2, 2011, when Judge Rose denied a motion to amend the judgment under Fed. R. Civ. P. 59; the 60(b)(1)

---

[1] The first copy of the R&R (Doc. No. 60) was returned by the Postal Service as undeliverable, presumably because it had been addressed to Eziolisa at FCI Gilmer rather than FCI Milan. The second copy reached him in time for him to file the pending Objections within the time allowed.

2

Motion was filed August 4, 2013.[2]  Fed. R. Civ. P. 60(c) requires that motions for relief from judgment under Fed. R. Civ. P. 60(b)(1) be filed within one year from the date the judgment became final or December 2, 2012.  Eziolisa's 60(b)(1) Motion is late by over eight months and the Magistrate Judge recommended dismissal on that basis (Report, Doc. No. 60, PageID 283).

Eziolisa objects that Fed. R. Civ. P. 60(c) "is a nonjurisdictional procedural requirement as a claim-processing rule which do [sic] not 'limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court.'"  (Objections, Doc. No. 63, PageID 289), *citing Dolan v. United States*, 130 S. Ct. 2533, 2538 (2010) and *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004).

Eziolisa is correct that the courts distinguish between time limits which are jurisdictional (i.e. limits on a court's authority) and those which are not.  The Supreme Court explained the distinction in the cases Eziolisa cites.  *Dolan* concerned a court's missing a deadline for restitution orders under the Mandatory Victims Restitution Act.  Regarding the issue now being considered, Justice Breyer wrote for the Court:

> Thus, the question before us concerns the consequences of the missed deadline where, as here, the statute does not specify them.
>
> In answering this kind of question, this Court has looked to statutory language, to the relevant context, and to what they reveal about the purposes that a time limit is designed to serve. The Court's answers have varied depending upon the particular statute and time limit at issue. Sometimes we have found that the statute in question imposes a "jurisdictional" condition upon, for example, a court's authority to hear a case, to consider pleadings, or to act upon motions that a party seeks to file. See, *e.g.,Bowles* v. *Russell*, 551 U.S. 205, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007). But cf. *Kontrick* v. *Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) (finding bankruptcy rule did not show legislative intent

---

[2] This filing date gives Eziolisa the benefit of the "mailbox" rule of *Houston v. Lack,* 487 U.S. 266 (1988).

to "delineat[e] the classes of cases" and "persons" properly "within a court's adjudicatory authority"); see also *Reed Elsevier, Inc.* v. *Muchnick*, 559 U.S. ___, ___ , 130 S. Ct. 1237, 176 L. Ed. 2d 18, 26-28 (2010) (discussing use of term "jurisdictional"). The expiration of a "jurisdictional" deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. The parties cannot waive it, nor can a court extend that deadline for equitable reasons. See *John R. Sand & Gravel Co.* v. *United States*, 552 U.S. 130, 133-134, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008).

In other instances, we have found that certain deadlines are more ordinary "claims-processing rules," rules that do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court. Unless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline's protection. See, *e.g., Kontrick* v. *Ryan*, *supra*, at 454-456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (60-day bankruptcy rule deadline for creditor's objection to debtor discharge); *Eberhart* v. *United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) *(per curiam)* (7-day criminal rule deadline for filing motion for a new trial).

In still other instances, we have found that a deadline seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed. See, *e.g., United States* v. *Montalvo-Murillo*, 495 U.S. 711, 722, 110 S. Ct. 2072, 109 L. Ed. 2d 720 (1990) (missed deadline for holding bail detention hearing does not require judge to release defendant); *Brock* v. *Pierce County*, 476 U.S. 253, 266, 106 S. Ct. 1834, 90 L. Ed. 2d 248 (1986) (missed deadline for making final determination as to misuse of federal grant funds does not prevent later recovery of funds); *Barnhart* v. *Peabody Coal Co.*, 537 U.S. 149, 171-172, 123 S. Ct. 748, 154 L. Ed. 2d 653 (2003) (missed deadline for assigning industry retiree benefits does not prevent later award of benefits).

After examining the language, the context, and the purposes of the statute, we conclude that the provision before us sets forth this

4

> third kind of limitation. The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution.

*Dolan, supra,* at 2538-2539.  In *Kontrick*, the Court held that time limits on objections to discharge, created by the Bankruptcy Rules, were not jurisdictional constraints on the bankruptcy court. On the question whether time limits in the Bankruptcy Rules are jurisdictional, Justice Ginsburg wrote for a unanimous court:

> The time constraints applicable to objections to discharge are contained in Bankruptcy Rules prescribed by this Court for "the practice and procedure in cases under title 11." 28 USC § 2075; cf. § 2072 (similarly providing for Court-prescribed "rules of practice and procedure" for cases in the federal district courts and courts of appeals). "[I]t is axiomatic" that such rules "do not create or withdraw federal jurisdiction." *Owen Equipment & Erection Co.* v. *Kroger,* 437 U.S. 365, 370, 57 L. Ed. 2d 274, 98 S. Ct. 2396 (1978).

The Federal Rules of Civil Procedure, like the Bankruptcy Rules at issue in *Kontrick*, are adopted by the United States Supreme Court under the Rules Enabling Act, 28 U.S.C. § 2072, which prohibits the Court from making rules that purport to change the jurisdiction of the district courts..  Thus Eziolisa is correct that the time limit in Fed. R. Civ. P. 60(c) is not jurisdictional, but instead a "claim-processing rule."

But the fact that Fed. R. Civ. P. 60(c) is not a jurisdictional limitation does not mean that it is not mandatory and binding on the district courts.  For example, the rule requiring exhaustion of state court remedies in habeas corpus is not jurisdictional, but it is nonetheless binding. Eziolisa cites not a single case in which the Supreme Court or any circuit court has held a district court may ignore the time limitations in Fed. R. Civ. P. 60(c).  The law is to the contrary. "A

5

motion under clauses (1), (2), or (3) must be denied as untimely if made more than one year after judgment regardless of whether the delay was reasonable." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 2866 (2012), *citing, inter alia, Ackermann v. United States*, 340 U.S. 193 (1950); *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264 (6th Cir. 1998).

Because it was filed more than eight months after the time limit for filing such Motions, Eziolisa's 60(b)(1) Motion should be denied as untimely.

**The 60(b)(1) Motion Is Not a Successive § 2255 Motion**

Under 28 U.S.C. § 2255(h), a federal prisoner may not file a second or successive § 2255 motion without the prior permission of the Circuit Court which Eziolisa has not received. Moreover, a defendant cannot escape the impact of the rule by labeling as a motion for relief from judgment what is in essence a successive motion. The Supreme Court clarified the distinction in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), where it held that a Rule 60(b) motion presents a "claim" if it seeks to add a new ground for relief from the state or federal conviction or attacks the federal court's previous resolution of a claim on the merits, though not if it merely attacks a defect in the federal court proceedings' integrity. *Gonzalez* involved an attack on the district court's prior statute of limitations decision on the basis of later Supreme Court law. The Court held this was a proper use of Rule 60(b) and the district court could reach the motion on the merits without precertification by the court of appeals.

In his Rule 60(b)(1) Motion, Eziolisa asserts that his conviction must be set aside for ineffective assistance of trial counsel in that his trial attorney "fail[ed] to object to assessed criminal history points for petty theft and driving without consent." (Motion, Doc. No. 59,

6

PageID 276.) Aware of *Gonzalez v. Crosby*, he asserts his 60(b)(1) motion qualifies because it "attacks the integrity" of the judgment dismissing his first § 2255 Motion because this Court did not deal in its Decision with this claim of ineffective assistance of trial counsel. *Id*.

Eziolisa did indeed raise this same claim in his first § 2255 Motion as the second subclaim of his Second Ground for Relief. The Court did not address this claim on the merits because it found Eziolisa was barred from raising the claim by ¶ 17 of his Plea Agreement which waived appeal and collateral attack with exceptions not relevant here. Because the claim was raised in the first § 2255 Motion, the present 60(b)(1) Motion is not a successive § 2255 motion masquerading as something else.

But Eziolisa asserts the Court's interpretation of the Plea Agreement is wrong. He notes the Plea Agreement preserves his right to appeal if the Court "[1] determines a Sentencing Guidelines enhancement in the nature of a specific offense characteristic or upward adjustment applies, which was not agreed to by the parties and was objected to be the Defendant and imposes a sentence above the Sentencing Guidelines range that would have applied but for the enhancement, or [2] imposes a sentence above the applicable Sentencing Guidelines as determined by the Court." (Motion, Doc. No. 59, PageID 276-77.)

As noted in the pending Report, this argument was rejected in the Decision on the first § 2255 Motion and "[i]t is now the law of the case that Eziolisa's ineffective assistance of trial counsel claim is within the scope of his waiver in the Plea Agreement." (Doc. No. 60, PageID 283.) Eziolisa has offered no reason why this Court should revisit this question, especially in light of the Sixth Circuit's denial of certificate of appealability, which amounts to a holding that this Court's decision on the point is not debatable among reasonable jurists.

If, despite the law of the case doctrine, the Court decides to re-address Eziolisa's argument about the scope of the waiver, that argument is without merit. In the 60(b)(1) Motion he notes the language from the Plea Agreement noted above and

> argues that because his ex-lawyer failed to object to the P.S.I. Report at page 16 Section # 78 and Section # 79 for two uncounseled" misdemeanor convictions for Petty Theft and Driving Without Consent in which he was not represented by counsel and no valid waiver exist, Movant Eziolisa received a sentence above his CORRECT applicable advisory Guideline range which is actually Offense Level 29 Criminal History Category I which yields an "advisory" guideline range of 87-108 months in the matter herein. Also the increase in sentence that was not objected by Eziolisa's ex-lawyer is determined to be a two level increase in his criminal history category above the correct Sentencing Guideline range which renders argument two outside the scope of his appellate waiver, thus Rule 60 (b) (1) should be GRANTED and § 2255 motion reopened in the matter herein.

(Motion, Doc. No. 59, PageID 277.) This argument is unavailing for at least the following reasons:

1. The quoted language is about exceptions to the waiver of **appeal**. The Plea Agreement has no exceptions to the waiver of collateral attack. (See Plea Agreement, Doc. No. 24, PageID 59.)

2. The quoted language allows an appeal if the Court determines an offense characteristic enhancement. Eziolisa's claim relates to the criminal history side of the Guidelines calculation, not the offense characteristic side.

3. The quoted language permits an appeal if the Court imposes a sentence above the Sentencing Guidelines range "as determined by the Court." Judge Rose imposes a sentence within the Guidelines range as he calculated it. The waiver does not permit an appeal from the Court's

determination of what the Guideline range is, but only if the Court departs upward from the range as the Court determines it.

**There is No Merit in the Underlying Ineffective Assistance of Trial Counsel Claim**

If the Court decides to reach the merits despite the foregoing analysis, it should rule against Eziolisa on the merits. He claims his attorney was ineffective for failing to object to the counting of two misdemeanor convictions which he claims were uncounseled. The two convictions are reflected at ¶¶ 78 and 79 of the Presentence Investigation Report and are for petty theft and driving a motor vehicle without the owner's consent. With respect to each, the Probation Officer indicated that "attorney representation was not indicated." *Id.* The Probation Officer assessed one criminal history category point for each of these convictions resulting in a calculated criminal history of category II. *Id.* at ¶ 81.

However, when Eziolisa was sentenced, although Mr. Mullins concurred with the category II assessment, he argued that it overstated Eziolisa's criminal history and that he should be viewed as a category I offender. (Sentencing Transcript, Doc. No. 37, PageID 133-34.) Judge Rose accepted Mr. Mullins' argument and found a criminal history category of I instead of II. *Id.* at PageID 146. He then found that the Guideline range on Count I was 87 to 108 months, ten months less than recommended by the Probation Officer. Count II for brandishing a firearm in the course of a bank robbery required a consecutive sentence of at least 84 months. He then imposed a sentence of 181 months, only ten months above the bottom of the Sentencing Guideline range and in the middle of the sentencing range Eziolisa contends he would have

received if Mr. Mullins had successfully challenged the two misdemeanor convictions (Judgment, Doc. No. 32).

Thus even if the criminal history category calculation of the Probation Officer was wrong because the two misdemeanor convictions were uncounseled and even if it was deficient performance on Mr. Mullins' part to fail to make that argument, Eziolisa was not prejudiced by that deficiency, because Judge Rose reduced the criminal history category to I which is what it would have been without any assessment of criminal history points.  If the Court decides to reach the merits of the ineffective assistance of trial counsel claim, it should deny relief on the merits. There can be no reversal for ineffective assistance of trial counsel when the defendant has suffered no prejudice thereby.

**Conclusion**

Based on the foregoing analysis, the Rule 60(b)(1) Motion should be denied with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 4, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).